CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 21 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REYNOLD GEORGE SAMUELS, JR., )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Crim. No. 3:08-cr-00005<br><br><br><br><br><br><br><br>By: Michael F. Urbanski<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Reynold George Samuels, Jr. ("Samuels"), a federal inmate proceeding pro se, brings this motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. Samuels challenges his conviction and sentence for conspiracy to distribute Schedule I and II controlled substances and copyright infringement. Specifically, Samuels asserts that his counsel, Francis Lawrence ("Lawrence"), provided ineffective assistance by failing to file an appeal upon Samuels' request. By Order dated January 29, 2010, the court referred this matter to the undersigned and directed that an evidentiary hearing be held to determine whether Samuels requested that Lawrence file an appeal. Such a hearing was held on June 30, 2010. Samuels participated in the hearing via video conference.

Based on the evidentiary hearing testimony, the undersigned concludes that there is no credible evidence to indicate that Lawrence was ineffective in failing to file an appeal. As such, the undersigned **RECOMMENDS** that Samuels' § 2255 motion to vacate, set aside or correct his conviction and sentence be **DISMISSED**.

# I.

In February 2008, a Grand Jury sitting in the Western District of Virginia, Charlottesville Division, returned a fourteen-count indictment charging Samuels with knowingly and intentionally engaging in a continuing criminal enterprise, conspiring to distribute Schedule I and Schedule II controlled substances, unlawfully possessing a firearm, knowingly and intentionally distributing a detectable amount of Schedule I and II controlled substances, and infringing a copyright by reproducing and distributing copyrighted works. Pursuant to a plea agreement with the United States, Samuels pled guilty on October 27, 2008 to the charges of conspiring to distribute Schedule I and Schedule II controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) and willfully infringing a copyright by reproducing and distributing ten or more copyrighted works for purposes of private financial gain in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319.[1]

Francis Lawrence is an attorney practicing in Charlottesville. Samuels had two attorneys prior to retaining Lawrence as counsel for this matter. Samuels' first attorney was dismissed due to a conflict of interest, while the second attorney was dismissed by Samuels due to personal differences. Lawrence represented Samuels as his trial counsel throughout the rest of the proceedings, including the guilty plea hearing on October 27, 2008. Because Lawrence had represented Samuels previously, they maintained a positive relationship.

Lawrence, recognizing the seriousness of the charges against Samuels and the strength of the United States' evidence, advised Samuels that it was in his best interest to sign a plea agreement. The plea agreement dismissed pending cocaine distribution and firearm possession charges in exchange for pleas of guilty to Count Two, conspiracy to distribute Schedule I and II

---

[1] All of the counts listed in the indictment were dismissed pursuant to the plea agreement except for Counts Two and Fourteen.

controlled substances, and Count Fourteen, copyright infringement. Samuels stipulated that United States Sentencing Guidelines Manual (U.S.S.G.) §§ 2D1.1 and 3B1.1 applied to his conduct. Thus, Samuels was held responsible for the distribution of 3,000 to 10,000 kilograms of marijuana for the purpose of sentencing. Furthermore, as one of the terms of his plea agreement, Samuels agreed not to appeal his sentence.

Samuels was sentenced on January 12, 2009. The court advised Samuels of the waiver of his right of appeal and specifically that his "waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor." Transcript of January 12, 2009 Sentencing Hearing [hereinafter Sent. Hrg. Tr.] 28. The court continued, "If you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement." Id. Additionally, at the sentencing hearing, the court asked Samuels and his attorney if he had an opportunity to review the pre-sentence report, including any revisions that might have been made. After conferring with Lawrence, Samuels replied, "Yes, sir." Id. at 2. The court then sentenced Samuels to 292 months of confinement on Count Two and sixty months of confinement on Count Fourteen, all to be served concurrently.

On July 7, 2009, the Court held a telephonic hearing to determine the amount of restitution to be paid to the Motion Picture Association of America ("MPAA").[2] The Court ordered that $12,532.80 be paid to the MPAA by Samuels. This amended sentence was ordered pursuant to 18 U.S.C. § 3664. Lawrence did not contact Samuels to discuss an appeal.[3]

Samuels filed this motion for relief pursuant to 28 U.S.C. § 2255 on September 11, 2009, claiming that Lawrence was ineffective in failing to: (1) file a motion to suppress seized

---

[2] Petitioner was indicted in Count Fourteen for infringing a copyright by reproducing and distributing copyrighted works. He copied ten or more copyrighted films onto a DVD format within a 180 day period.
[3] Samuels indicated at the evidentiary hearing that he was never made aware that the order had been amended.

evidence; (2) file a motion requesting a Bill of Particulars; (3) challenge the validity of Count Two of the Indictment; and (4) file an appeal of his sentence.

The district court issued a Memorandum Opinion and Order on January 29, 2010 referring Samuels' claim that counsel was ineffective in failing to file an appeal upon request to the undersigned for an evidentiary hearing. The issue before the court is whether Samuels requested that Lawrence file a notice of appeal.

## II.

Samuels claims to have written a letter to Lawrence on January 14, 2009, requesting an appeal of his sentence. The letter states, "I am writing this letter to you because I would like for you to appeal Count 2 because I was not charged." Transcript of June 30, 2010 Evidentiary Hearing [hereinafter Evid. Hrg. Tr.] 71. However, Lawrence has no record or memory of receiving such a letter.[4] Id. at 103. Lawrence did receive and retain a letter from Samuels dated January 19, 2009. Government's Exhibit No. 5 [hereinafter Govt. Ex. 5]. In the letter, Samuels states, "I'm still trying to process this matter. If not mistaken can we appeal the sentence without hurting the Plea? I feel that the Judge did things disproportionately not in our favor among other things."[5] Id.

On January 21, 2009, Lawrence visited Samuels at the Central Virginia Regional Jail in Orange County, Virginia. Evid. Hrg. Tr. 23. At the evidentiary hearing, Lawrence could not recall whether he specifically discussed an appeal with Lawrence at their January 21 meeting.

---

[4] Questions abound regarding the January 14 letter. First, the handwriting and signature of the January 14 letter appears inconsistent with that of another letter subsequently dated January 19, which Lawrence did receive. Second, the clear request for an appeal put forth in the January 14 letter seems inconsistent with the confusion of the January 19 letter, which seeks the best post-trial strategy—whatever it may be. Third, Lawrence does not have a copy of the January 14 letter in his case file, although it is customary for him to keep a copy of all correspondence from his clients in his case files. Fourth, Samuels asserts that he handwrites two copies of every letter in order to keep one for his personal records. He claims that the January 14 letter in his possession is a handwritten copy of an original he sent to Lawrence. However, Samuels cannot produce a second copy of any other letter to corroborate his story.
[5] Almost every word of this sentence was originally capitalized.

4

Id. at 29. However, Lawrence did retain twelve pages of detailed notes that summarized his discussion with Samuels at this meeting. Id. at 28. Although Lawrence testified that his notes did not reference "an appeal or being instructed to do an appeal," he stated that they did include a "recap of sentencing issues" and a summary of Samuels' post-trial strategy. Id. Lawrence's notes and recollection indicate that the majority of the session was used to discuss possible efforts to secure a substantial assistance motion by the United States.[6] However, Lawrence further testified that if Samuels had requested an appeal, he would have counseled against it, emphasizing "that he could not appeal without abrogating his plea agreement." Id. at 29-30. Ultimately, Lawrence testified that if Samuels had asked him to file a notice a notice of appeal, he "would have after trying to dissuade [Samuels] from doing [so]." Id. at 30.

### III.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's defective performance prejudiced the defendant, and the errors were so serious as to deprive the defendant of a fair trial. Id. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. As such, there is a "strong presumption that counsel's performance falls within a wide range of reasonable professional assistance." Id.

---

[6] Samuels was one of approximately ten individuals arrested in connection with one conspiracy. However, at the evidentiary hearing, the United States indicated that Samuels' offer of assistance came too late in the investigation to be of significant value. No substantial assistance motion has yet been filed.

Failing to file a notice of appeal when directed to do so constitutes ineffective assistance. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if not expressly requested to file an appeal, a court may find counsel ineffective for failing to consult with a client about an appeal under certain circumstances. Id. at 478. The Court has defined "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 471. As a constitutional matter, counsel's failure to consult with a defendant concerning an appeal is not always considered "unreasonable" or "deficient." Id. at 479. If counsel failed to consult with his or her client, the inquiry becomes whether such a failure constitutes deficient performance. Id. at 471. Counsel has a constitutional duty to consult with a client concerning an appeal when (1) a rational defendant would want to appeal, or (2) the defendant made a reasonable effort to demonstrate he had an interest in appealing. Id. at 480. In making this inquiry, "[o]ne highly relevant factor will be whether the conviction follows a trial or a guilty plea, because a plea both reduces the scope of potentially appealable issues and may indicate that the defendant seeks an end to judicial proceedings." Id. at 471.

Samuels fails to meet the first prong of the Strickland test. Lawrence's representation did not fall below an objective standard of reasonableness. Lawrence testified that he reviewed the plea agreement with Samuels in its entirety, including its waiver of appeal. Evid. Hrg. Tr. 38-39. During his guilty plea hearing on October 27, 2008, Samuels made it clear to the court that he understood the charges to which he was pleading guilty and the range of punishment provided in such cases. Sent. Hrg. Tr. 8. Additionally, when asked about the plea agreement, Samuels responded that he understood he was waiving his right to appeal. Id. at 14.

In the instant case, Samuels failed to demonstrate that he desired to appeal his sentence. Samuels asserts that he wrote a letter to Lawrence on January 14, 2009, asking him to appeal Count Two. The letter states, "I would like for you to appeal Count two, because I was not charged." Evid. Hrg. Tr. 71. Lawrence testified that he does not have a copy of the January 14 letter in his files and had not seen the letter prior to the morning of the evidentiary hearing. Id. at 103. However, even if the court were to accept the validity of the January 14 letter, Samuels' claim would fail as a result of Lawrence's meeting with Samuels seven days later. Id. at 41.

Lawrence visited Samuels in prison on January 21, 2009. Id. at 23. Lawrence's twelve pages of notes from the meeting suggest that the discussion focused on the possibility of eliciting a substantial assistance motion from the United States. Id. at 28. Both parties agree that most of the conversation centered on potential substantial assistance possibilities. Id. at 79. Samuels testified that the issue of an appeal came up. Id. at 80. Although Lawrence cannot specifically recall if an appeal was discussed, he testified that his "answer to [Samuels'] query . . . would be that he could not appeal without abrogating his plea agreement." Id. at 29-30.

The evidence received at the evidentiary hearing makes it plain that Lawrence's representation did not fall below an objective standard of reasonableness. The January 21 meeting compels one of the following two conclusions: an appeal was discussed and rejected, or the failure to discuss an appeal was reasonable. The first conclusion is supported by Lawrence's testimony that if the issue of an appeal was discussed, he would have unequivocally advised against it. Id. at 42. The evidence also supports the second conclusion that if an appeal was not discussed, such a decision was reasonable. The fact that a rational defendant in Samuels' position would not have appealed his sentence adds credibility to Lawrence's testimony that it was not unreasonable for him to believe that Samuels had no interest in appealing.

Samuels also wrote a letter to Lawrence on January 19, 2009, indicating his disappointment as to the length of his sentence. Id. The letter states:

> Dear Fran[,] How are you? I'm still trying to process this matter. If Not Mistaken can We Appeal the sentence without hurting the Plea. I Feel that the Judge Did things [disproportionately,] Not In our Favor among other things. Someone was About to tell Me About A Murder [and] I think I could get them to come Forward. But I'm in [prison] And need to get back to that Block . . . Reggie.

Govt. Ex. 5. The language of the January 19 letter reflects Samuels' dissatisfaction with his sentence. The second half of Samuels' letter focuses upon a possible strategy to lower his sentence. Rather than directly requesting an appeal in his January 19 letter, Samuels asks for Lawrence's advice concerning whether an appeal would affect his plea agreement.

Even if Samuels' solicitation of advice is construed as a request for an appeal, his claim must fail. It is undisputed that Lawrence met with Samuels for a significant period of time nine days after his sentencing. Evid. Hrg. Tr. 23. The fact of this lengthy meeting, largely founded on the issue of obtaining a substantial assistance motion, compels the conclusion that either Samuels was not interested in an appeal or he requested and followed Lawrence's advice, which was not to appeal.

Had Samuels not plead guilty to Counts Two and Fourteen, he would have faced a possible sentence of ten years to life in prison for Count Two and up to five years in prison for Count Fourteen. Transcript of October 27, 2008 Guilty Plea Hearing [hereinafter Guilty Plea Hrg. Tr.] 6-7. If Samuels breached his plea agreement by appealing his sentence, he would be subject to the provision of the plea agreement entitled "Remedies Available to the United States." Plea Agreement ¶ 8. That provision states the possible consequences to Samuels for breaching the plea agreement:

> I hereby stipulate and agree that the United States Attorney's office may, at its election, pursue any or all of the following remedies if I fail to comply with any provision of this agreement: (a) declare this plea agreement void; (b) refuse to dismiss any charges; (c) reinstate any dismissed charges; (d) file new charges; (e) withdraw any substantial assistance motion made, regardless of whether substantial assistance has been performed; (f) refuse to abide by any provision, stipulations, and/or recommendations contained in this plea agreement; or (g) take any other action provided for under this agreement or by statute, regulation or court rule.

Id. A reasonable defendant in Samuels' position would not appeal his sentence due to the fact that he faced a sentence of up to life in prison if he proceeded to trial and because of the possible consequences that could result from a breach of his plea agreement. There is no evidence in the record to suggest that Samuels did not fully understand the possible sentence he faced if he proceeded to trial. In fact, Samuels confirmed his understanding of the sentence to the court at his guilty plea hearing. Guilty Plea Hrg. Tr. 10.

"[I]n determining whether a rational defendant would have wanted to appeal, we consider important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all of the appeal rights." United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010). In Samuels' case, all three considerations lead to the conclusion that a rational defendant in his position would not want to appeal. Samuels' conviction followed a guilty plea, in which he expressly waived his appeal rights. Additionally, Samuels received the sentence bargained for as part of the plea agreement, resulting from the stipulation that he was to be held responsible for the distribution of 3,000 to 10,000 kilograms of marijuana for the purpose of sentencing. Because Samuels received a sentence within the range "he bargained for with the government, his expectations had been met and no nonfrivolous grounds for appeal remained that would have put [Lawrence] on notice that a reasonable

defendant would have wanted to appeal." Thus, Lawrence did not have a constitutionally imposed duty to consult with Samuels about an appeal. See Flores-Ortega, 528 U.S. at 480 (noting that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that a rational defendant would want to appeal").

The inquiry then becomes whether Samuels reasonably demonstrated that he had an interest in appealing. Id. In making this determination, courts must consider the information counsel knew or should have known at the time. Id. Important to this determination is whether the conviction followed a trial or guilty plea. Id. A guilty plea "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." Id. Courts also should scrutinize whether a plea bargain waived all or some of the defendant's appellate rights. Id.

The record establishes that Samuels did not reasonably demonstrate that he had an interest in appealing. Not only did he orally waive his appeal rights but also signed a plea agreement waiving his appeal rights. Guilty Plea Hrg. Tr. 14; Plea Agreement ¶¶ 7(b)-7(c). Additionally, Samuels did not avail himself of the court's advice that he could tell the clerk of the court of his intention to appeal, and the clerk would file the notice. Sent. Hrg. Tr. 28.

Finally, Samuels asserts that Lawrence was required to consult with him after the amended judgment concerning the amount of restitution was entered on July 7, 2009. Specifically, Samuels contends that "[i]f restitution is considered to be a substantive amendment," the appeal deadline would be extended and thus, give rise to an obligation to consult. Evid. Hrg. Tr. 125. However, as the Fourth Circuit has noted, restitution is "part of the criminal defendant's sentence." United States v. Cohen, 459 F.3d 490, 496 (4th Cir. 2006). 18 U.S.C. § 3664 provides that a "sentence that imposes an order of restitution is a final judgment

notwithstanding the fact that . . . such a sentence can subsequently be . . . appealed and modified under section 3742 [of Title 18, United States Code]." In Cohen, the Fourth Circuit concluded that, "as a general rule, a defendant who has agreed '[t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed,' has waived his right to appeal a restitution order." Id. at 498.

In this case, the initial judgment not only imposed a sentence of imprisonment and supervised release, but also awarded restitution. The calculation of the exact amount of restitution, however, was deferred to a later date pending investigation. Sent. Hrg. Tr. 29. In United States v. Dolan, --- U.S. ---, 130 S. Ct. 2533, 2533 (2010), the Supreme Court considered whether a district court that misses the Mandatory Victims Restitution Act's ("MVRA's") 90-day deadline for district courts to make a final determination of victims' losses "retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." Id. at 2537. The Court determined that in such a situation, the sentencing court does retain the power to order restitution. Id. at 2539. In forming its conclusion, the Court noted that the statute "provides adequate authority to do what the sentencing judge did here— essentially fill in an amount-related blank in a judgment that made clear that restitution was 'applicable.'" Id. at 2544. Thus, the court rejected defendant's argument that the sentence was not a "final judgment" for appeal purposes. Id. at 2542.

In Samuels' case, the district court ordered restitution, leaving open only the amount. Because Samuels knew that restitution was ordered at the same time as his sentence and period of supervised release, consultation in the context of the amended judgment was not required. As the Court noted in Dolan, "strong arguments favor the appealability of the initial judgment

11

irrespective of the delay in determining the restitution amount." Id. As such, Samuels cannot claim that consultation was required in the context of the amended judgment in July 2009 where there was no appeal from the initial conviction and sentence.

In conclusion, there is no credible evidence to suggest that Samuels ever requested Lawrence to file an appeal. First, Samuels decided to accept the government's plea agreement after its terms and conditions were fully explained to him by Lawrence, the district court, and the government. Second, a consideration of all the relevant factors, including the information Lawrence knew or should have known, leads to the conclusion that no rational defendant would seek an appeal in Samuels' case given the risk of waiving the benefits of the plea agreement. Third, Samuels failed to show that he sufficiently demonstrated to Lawrence his desire to appeal. Thus, Lawrence was not required to consult with Samuels concerning an appeal.

"[T]he inquiry under Strickland and Flores-Ortega is not whether counsel made the *best* decision in the circumstances, but whether he made a *reasonable* decision." Cooper, 617 F.3d at 315. Lawrence "could reasonably believe that he had shaped a proceeding that was not only fair to [Samuels] but also accomplished everything [Samuels] wanted." Id. at 314. As such, Lawrence's representation did not fall below an objective standard of reasonableness. Samuels' claim is meritless, and it is **RECOMMENDED** that it be **DISMISSED**.

## IV.

In addition to Samuels' claim that Lawrence failed to note an appeal, Samuels also asserts that Lawrence provided ineffective assistance by failing to challenge the validity of Count Two of his Indictment, file a motion to suppress seized evidence, and file a motion requesting a Bill of Particulars. The district court followed the Fourth Circuit's instructions in United States v. Killian and decided not to consider the merits of this claim until ruling on the underlying

§ 2255 motion. United States v. Killian, 22 Fed. App'x 300 (4th Cir. 2001). To the extent the district court considers the merits of Samuels' remaining claims, the undersigned **RECOMMENDS** the claims be **DISMISSED**.

Samuels claims that Lawrence was ineffective in failing to: (1) file a motion to suppress seized evidence; (2) file a motion requesting a Bill of Particulars; and (3) challenge the validity of Count Two of the Indictment. Samuels' remaining ineffective assistance claims must fail because Lawrence's representation did not fall below an objective standard of reasonableness. In order to prove one's counsel was ineffective, a defendant must show (1) the representation provided by counsel "fell below an objective standard of reasonableness," and (2) "counsel's deficient performance somehow prejudiced the defendant." Strickland, 466 U.S. at 688, 694.

Samuels fails to meet the first prong of the Strickland test for all three of his allegations of specific errors made by Lawrence during the course of his representation. First, Samuels asserts that Lawrence's failure to file a motion to suppress marijuana seized as a result of the search warrant constitutes ineffective assistance of counsel. However, the evidence shows that Lawrence's decision not to file a motion to suppress was based upon a tactical decision about how best to represent his client. Lawrence testified that he did not file a motion to suppress because he believed that it lacked merit and ultimately would not be successful. Evid. Hrg. Tr. 36-37. Additionally, Lawrence stated that because they were in "pretty vigorous plea negotiations" at the time, "it was [his] belief that a useless hearing would not help that process." Id. at 36.

Second, Samuels contends that Lawrence was ineffective in failing to file a motion requesting a Bill of Particulars. However, the record shows that Lawrence's decision not to file a motion requesting a Bill of Particulars was based upon a sound strategy. Lawrence determined

13

that such a request would be of no value to Samuels. Id. at 35. Thus, Lawrence's decision was made according to his reasonable professional judgment and does not fall below an objective standard of reasonableness.

Third, Samuels asserts that he was not properly indicted within the five-year statute of limitations pursuant to 18 U.S.C. § 3282 and that his sentence would have been reduced if the indictment had been objected to at trial. Petitioner's Motion [hereinafter Pet. Mot.] at 2-3. However, Samuels' understanding of the statute is misguided and incorrect.

18 U.S.C. § 3282 states that "[N]o person shall be prosecuted, tried, or punished for any offense . . . unless the indictment is found or the information is instituted within five years . . . after such offense shall have been committed." Count Two of the Indictment states that the conspiracy began on or about December 21, 2001 and continued through February 13, 2008, the date of the Indictment. Because Samuels' conduct is characterized as a "continuing offense," the period of limitation begins to run only upon the termination of his course of conduct or his complicity therein. United States v. Smith, 373 F.3d 561, 563-64 (4th Cir. 2004). In making this determination within the context of a conspiracy, the period of limitation begins with the last overt act. Grunewald v. United States, 353 U.S. 391, 397 (1957). Count Seven of the Indictment alleges that Samuels distributed marijuana on or about September 14, 2007, and Count Eight alleges distribution on or about September 28, 2007. These overt acts in furtherance of the drug dealing conspiracy alleged in Count Two plainly fall within the limitations period. Because Samuels was properly indicted for conspiracy in Count Two within the five-year period, Lawrence's decision to not challenge Count Two of the Indictment does not constitute ineffective assistance of counsel.

Not only does Samuels fail to meet the first prong of the Strickland test but also fails to assert any facts establishing prejudice. To establish prejudice, a defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In light of the record, there is nothing to indicate that Lawrence's decision to not challenge the validity of Count Two of the Indictment, file a motion to suppress seized evidence, or file a motion requesting a Bill of Particulars affected the outcome of the proceeding. Samuels has not established that a motion to suppress would have been granted, and there is nothing to indicate that a Bill of Particulars would have altered Samuels' sentence. Additionally, Samuels' contention that he was not properly indicted within the five-year statute of limitations lacks merit. Therefore, Samuels is unable to show that prejudice resulted from Lawrence's performance, affecting the outcome of the proceeding. As such, Samuels' additional ineffective assistance claims must fail.

V.

Based on the foregoing, the undersigned finds that Samuel has failed to establish any credible evidence which suggests that counsel provided constitutionally deficient legal assistance by failing to file an appeal, file a motion to suppress seized evidence, file a motion to request a Bill of Particulars, or challenge the validity of Count Two of the Indictment. Accordingly, the undersigned recommends that Samuels' § 2255 motion to vacate, set aside or correct his conviction and sentence be dismissed.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of

law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record.

**ENTER:** This 21st day of October, 2010.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge